# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 21, 2011 Session

## STATE OF TENNESSEE v. ANTONIO DWAYNE JOHNSON

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40900303    John H. Gasaway, Judge**

---

### No. M2010-02086-CCA-R3-CD - Filed May 25, 2012

---

A Montgomery County Grand Jury returned an indictment against Defendant, Antonio Dwayne Johnson, for six counts of selling .5 grams or more of cocaine and six counts of delivering .5 grams or more of cocaine. Following a jury trial on counts nine and ten of the indictment (alternate theories of selling and delivering .5 grams of cocaine on August 22, 2008) Defendant was found guilty of selling more than .5 grams of cocaine. The remaining counts of the indictment were apparently tried separately. The trial court sentenced Defendant as a Multiple Offender to twelve years at 35% in the Department of Correction. On appeal, Defendant argues that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and CAMILLE R. MCMULLEN, J., joined.

Stephen Mills, Nashville, Tennessee (on appeal), and Roger Eric Nell, District Public Defender; and Charles S. Bloodworth, Assistant Public Defender, Clarksville, Tennessee (at trial) and for the appellant, Antonio Dwayne Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and John Finklea, Assistant District Attorney General; for the appellee, the State of Tennessee

## OPINION

## I. Background

Anthony Botts testified that he previously worked as a paid confidential informant for the Clarksville Police Department Major Crimes Unit. On August 22, 2008, he participated in a controlled drug purchase from Defendant. Early that evening, he met with officers from the Clarksville Police Department, including Agent William Evans, who searched him and his vehicle, and Agent Evans placed a recording device or "wire" on him. Mr. Botts testified that he called Defendant, whom he referred to as "Big Dog," and asked about buying some "dope." Defendant thought that he meant powder cocaine and said that he did not have any. Mr. Botts then "referred to the hard, being crack cocaine," and Defendant indicated that he had some of that. Mr. Botts asked Defendant the price of the cocaine, and Defendant said that they would discuss it in person. He told Defendant that he was still at work and would need approximately forty-five minutes before meeting with Defendant.

Mr. Botts testified that he called Defendant forty-five minutes to an hour later to arrange a meeting. Defendant then instructed him to drive to Caldwell Lane. However, Mr. Botts did not feel comfortable meeting there, so they changed the location to Roberts Street. Mr. Botts then drove to a blue metal building/boat shop on the 41-A By Pass, near its intersection with Roberts Street. Defendant was not there when Mr. Botts arrived, so he placed a couple of calls to Defendant. Mr. Botts testified that because his cell phone reception was bad, several of the calls were dropped. He eventually talked with Defendant who said that he was behind the building. They made arrangements for Mr. Botts to drive around the building onto Roberts Street. Mr. Botts testified that as he was driving down the street, he saw Defendant walking on the side of the street wearing a white t-shirt and blue jeans and carrying a styrofoam food box . Defendant approached the driver's side window, but Mr. Botts told him that the window would not roll down. Defendant walked to the passenger's side, opened the door, leaned in, and handed Mr. Botts the styrofoam box containing the controlled substance. Mr. Botts then handed Defendant $175. Mr. Botts testified that he and Defendant made small talk and that he looked in the container to make sure that it contained the drugs. Defendant walked away from the car, and Mr. Botts drove back to the "meet spot" and met agent Evans. He gave Agent Evans the styrofoam container and drugs, and he and his vehicle were again searched. Mr. Botts admitted that at the time of the transaction, he had been convicted of a sexual offense and was on the TBI's sex offender registry.

Agent William Thomas Evans, a drug agent with the Major Crimes Unit, testified that on August 22, 2008, he participated in a controlled drug buy involving Defendant. He and other agents met Anthony Botts at a predetermined location. Agent Evans searched Mr. Botts and his vehicle, and Mr. Botts and his vehicle were wired. Mr. Botts was then given $307 in buy money from the drug fund to make the purchase. Agent Evans testified that Mr. Botts called Defendant and that the conversation was recorded. The tape of the conversation

was played for the jury, and Defendant indicated that he had some "hard hard," which is slang for crack cocaine. Agent Evans also explained that "ball" is slang for an "eight ball" or an eighth of an ounce of crack cocaine or cocaine. He said that an "eight ball" was approximately 3.5 grams of cocaine and may cost between $75 to $250, which "really varies of how much product is actually in the City right now." Agent Evans estimated that the typical amount of cocaine taken from someone using the drug was .1 to .3 grams, and the cost was "[roughly] ten dollars every tenth of a gram." He identified Mr. Botts' and Defendant's voices on the phone call recording.

Agent Evans testified that he then followed Mr. Botts to a blue building near the intersection of 41-A By-Pass and Roberts Street. He and other agents maintained both audio and visual contact with Mr. Botts. Agent Evans testified that Mr. Botts initially parked on the right side of the blue building. He said:

> [Mr. Botts] first parked outside to where you could still see him from the By-Pass. Several phone calls were attempted, they were dropping, it was kind of a bad area for cell phone service. At one point, I did hear him outside the vehicle. Agents advised he was outside the vehicle. Attempted a few more phone calls and for the most part were dropping, I don't know if it was Mr. Johnson's phone or if it was Mr. Botts' phone causing the problem. Shortly thereafter, he did get back in his vehicle and I was advised then he turned onto the By-Pass, a distance of maybe a hundred, a hundred and fifty feet and then turned on to Roberts Street and was headed up - - it is a small hill, headed away from the By-Pass.

Agent Evans testified that after the transaction, Defendant walked away, and Mr. Botts turned around and drove back to the predetermined location. Agent Evans testified that Mr. Botts was under constant surveillance until he arrived back at the location. Agent Evans then took possession of the styrofoam box containing what appeared to be crack cocaine, and he searched Mr. Botts and his vehicle. He also received $132 back from Mr. Botts, which was the amount of the "buy money" not used by Mr. Botts.

Agent Evans testified that the styrofoam box contained a plastic bag with "a white crystalline rock like substance, which appeared to be consistent with crack cocaine." He field-tested the substance, and placed it in a film canister. The styrofoam box with the aluminum still in it was packaged in a larger brown bag. Agent Evans then placed the items in the police department's evidence drop box. Agent Evans acknowledged that at the time of the purchase, Mr. Botts was a registered sex offender. He was also on probation and wore an electronic ankle bracelet to monitor his whereabouts.

-3-

Shaunna Allman, supervisor of the evidence room for the Clarksville Police Department, testified that the items were checked into evidence from the drop box and then sent to the Tennessee Bureau of Investigation (TBI) for analysis.

Sergeant David O'Dell testified that he was working as a narcotics investigator for the Major Crimes Unit on August 22, 2008, and participated in the drug buy by conducting surveillance. He was positioned on the 41-A By-Pass near "the Old Task Force Headquarters, right by Edmondson Ferry and Roberts Avenue [sic]." He used a digital camera to take photographs and video of the transaction. Sergeant O'Dell saw Defendant walking down Roberts Street from the "Caldwell Lane area, Maddox Circle area, walking down towards the By-Pass." He took a photograph of Defendant with a white styrofoam container in his hand. Defendant was wearing a white t-shirt and long blue jean shorts. Sergeant O'Dell testified that he observed Defendant approach Mr. Botts' vehicle. He said that Defendant did not have the styrofoam box when he left the area.

Agent Joey Williamson testified that he also participated in the controlled buy on August 22, 2008. He conducted surveillance from a building directly across from Roberts Street. Agent Williams saw Defendant walking down Roberts Street wearing a white t-shirt and jean shorts. He also saw Defendant carrying a white container. Agent Williamson testified that he observed Defendant lean into the passenger's side of Mr. Botts' car. Agent Williamson then drove down the By-Pass toward Avondale, turned around, and drove back to the area of Roberts Street. He saw Defendant walking back up Roberts Street approximately ten to fifteen yards from Mr. Botts' vehicle. Defendant was no longer carrying the container.

Special Agent forensic scientist Patti Choate of the TBI testified that she analyzed the rock-like substance in the present case and determined that it contained 1.4 grams of cocaine, a Schedule II controlled substance.

## II. Analysis

Initially, we will address the State's argument that this Court should dismiss the appeal because Defendant failed to establish that he timely filed a notice of appeal. A notice of appeal must be filed within thirty days after the date of entry of the judgment from which the Defendant is appealing. Tenn. R. App. P. 4(a). A notice of appeal is non-jurisdictional, and the requirement for a timely notice may be waived in the interest of justice. *Id.* The time for filing a notice of appeal is tolled by the timely filing of a post-trial motion for judgment of acquittal, new trial, or arrest of judgment. Tenn. R. App. P. 4(c).

The record in this case shows that the judgment was entered on May 11, 2010, and Defendant's notice of appeal was filed on September 29, 2010. The record also contains an

order denying Defendant's motion for new trial. The order indicates that the hearing on the motion was held on September 1, 2010, and the order was filed on October 4, 2010. There is no copy of the motion for new trial in the record or nothing else to indicate when the motion was filed or that it was filed within thirty days of the judgment. Therefore, we will presume it was not timely filed, resulting in an untimely notice of appeal.

However, we waive the timely filing of the notice of appeal in the interest of justice since the only issue raised by Defendant in this case is the sufficiency of the evidence, which is an issue that does not need to be presented in a motion for new trial in order to be heard on appeal. *See State v. Boxley*, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001).

*Sufficiency of the Evidence*

Defendant argues that the evidence presented at trial was insufficient to support his conviction for selling more than .5 grams of cocaine because the Mr. Botts, the confidential informant, was not credible. We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557–58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236–37; *Carruthers*, 35 S.W.3d at 557.

Defendant was convicted of selling .5 grams or more of cocaine, a Schedule II controlled substance, a Class B felony. T.C.A. § 39-17-408(b)(4); § 39-17-417 (c)(1). Under our criminal code, "[i]t is an offense for a defendant to knowingly . . . [s]ell a controlled substance." T.C.A. § 39-17-417(a)(3). In this case, the proof shows that on August 22, 2008, Anthony Botts, a confidential informant, met agents of the Clarksville Police Department's Major Crimes Unit at a predetermined location to make a controlled drug purchase from Defendant. Mr. Botts and his vehicle were searched, and he and the vehicle were wired with a recording device. The wire device also transmitted his conversations to officers who monitored the transaction in real time. Mr. Botts placed a recorded call to Defendant and asked about buying some "dope." Defendant indicated that he had some crack cocaine and that he and Mr. Botts would discuss the price in person. He also instructed Mr. Botts to meet him at a location on Caldwell Lane; however, Mr. Botts did not feel comfortable meeting there, so they changed the location to Roberts Street.

Mr. Botts then drove to a blue metal building on the corner of Roberts Street near the 41-A By-Pass. Defendant was not there when Mr. Botts arrived so Mr. Botts placed several phones call to him, some of which were dropped due to poor reception. He eventually contacted Defendant who said that he was behind the building. Mr. Botts then drove around the building onto Roberts Street, and he saw Defendant walking down the street carrying a white styrofoam food container. Defendant walked to the passenger's side of the car, opened the door, leaned in, and handed Mr. Botts the styrofoam box containing the drugs. Mr. Botts then gave Defendant $175.00. Mr. Botts testified that he looked in the container to verify that the drugs were there and then drove back to the "meet spot." He gave Agent Evans the styrofoam container and drugs, and he and his vehicle were again searched. The rock-like substance in the container was later analyzed and determined to be 1.4 grams of cocaine.

Mr. Botts' testimony in this case was corroborated by agents of the Major Crimes Unit. Agent Evans testified that he searched Mr. Botts and his vehicle and wired both with a recording device. He also gave Mr. Botts $307.00 from the drug fund to make the buy. Agent Evans testified that Mr. Botts called Defendant, and the conversation was recorded. In the conversation, Defendant used slang for crack cocaine. Agent Evans testified that he followed Mr. Botts to the blue building near the By-Pass and Roberts Street, and he and other agents maintained both audio and visual contact with Mr. Botts. He said that Defendant walked away after the transaction and that Mr. Botts drove back to the predetermined location. Agent Evans said that Defendant was under constant surveillance until he arrived back at the location. He took possession of the styrofoam box containing what appeared to be crack cocaine, and he again searched Mr. Botts and the vehicle. He also received $132.00 back from Mr. Botts from the buy money.

Sergeant David O'Dell testified that he used a digital camera to take photographs and video of the transaction. He saw Defendant walking down Roberts Street from the "Caldwell

Lane area, Maddox Circle area, walking down towards the By-Pass." Sergeant O'Dell took a photograph of Defendant with the styrofoam container in his hand. He observed Defendant approach Mr. Botts' vehicle, and Defendant did not have the container when he left the area. Likewise, Agent Joey Williamson testified that he saw Defendant walking down Roberts Street carrying a white container. He saw Defendant lean into the passenger's side of Mr. Botts' car. Agent Williamson then drove down the By-Pass toward Avondale, turned around, and drove back tot he area of Roberts Street. He saw Defendant walking back up Roberts Street around ten to fifteen yards from Mr. Botts' vehicle no longer carrying the container.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's conviction for selling more than .5 grams of cocaine. The jury heard Mr. Botts' testimony and, by its verdict, obviously found his testimony and that of the drugs agents credible as was its prerogative. Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE